OLIVIER STRAW GOODS CORPORATION *v.* UNITED STATES (No. 2753)[1]

---

[1] T. D. 42134.

United States Court of Customs Appeals, April 4, 1927

*Walden & Webster* (*Walter F. Welch* of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter* and *John F. Kavanagh* of counsel) for the United States.

[Oral argument December 17, 1926, by Mr. Welch and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Exhibits 1, 2, 3, and 4, the proper classification of which is in controversy here, consist of cellulose.

Cellulose is defined in Funk & Wagnalls New Standard Dictionary as follows:

Cellulose, n. An amorphous white compound, isomeric with starch, insoluble in all ordinary solvents, forming the fundamental material of the structure of plants, and contained in the mantle of tunicates. The absorbent qualities of cellulose have made it of value in the arts. Filter paper, bleached cotton, etc., are nearly pure cellulose; and the cellulose from coconut fiber is used as packing in the sides of war vessels to prevent leakage through shot holes.

*Cellulose* has the property of swelling when wet to such an extent that if perforated by a projectile it will rapidly close the aperture by its own action until water-tight.

A thick mucilaginous solution containing the cellulose substance is forced, under high pressure, through a rectangular orifice producing narrow thin strips, which drop on a nickel-plated wall where the mositure is evaporated. The latter process brings the strips or threads to the condition they were in prior to being woven, plaited, or braided into the exhibits before us. The merchandise is braids used for making ladies' hats, and was assessed for duty under paragraph 1430 of the Tariff Act of 1922 at 90 per centum ad valorem, and is claimed by importer to be properly dutiable at 60 per centum ad valorem under paragraph 31.

The pertinent parts of the paragraphs involved are as follows:

PAR. 1430. Laces, lace window curtains, burnt-out laces and embroideries capable of conversion into burnt-out laces, nets and nettings, embroidered or otherwise, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213 of this act, 90 per centum ad valorem; * * *

PAR. 1213. Artificial silk waste, 10 per centum ad valorem; artificial silk waste, not further advanced than sliver or roving, 20 cents per pound, but not less than 25 per centum ad valorem; yarns made from artificial silk waste, if singles, 25 cents per pound; if advanced beyond the condition of singles by grouping or twisting two or more yarns together, 30 cents per pound; yarns, threads, and filaments of artificial or imitation silk, or of artificial or imitation horsehair, by whatever name known and by whatever process made, if singles, 45 cents per pound; if advanced beyond the condition of singles by grouping or twisting two or more yarns together, 50 cents per pound; products of cellulose, not compounded, whether known as visca, cellophane, or by any other name, such as are ordinarily used in braiding or weaving and in imitation of silk, straw, or similar substances, 55 cents per pound; but none of the foregoing yarns, threads, or filaments, or products of cellulose shall pay a less rate of duty than 45 per centum ad valorem. Knit goods, ribbons, and other fabrics and articles composed wholly or in chief value of any of the foregoing, 45 cents per pound and 60 per centum ad valorem.

PAR. 31. Compounds of pyroxylin, of other cellulose esters or ethers, or of cellulose, by whatever name known (except compounds of cellulose known as vulcanized or hard fiber), in blocks, sheets, rods, tubes, or other forms, and not made into finished or partly finished articles, 40 cents per pound; made into finished or partly finished articles, of which any of the foregoing is the component material of chief value, 60 per centum ad valorem: *Provided*, That all such articles (except photographic and moving-picture films), whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph.

It is the contention of the importer that, before the braids could be properly classified under paragraph 1430, it must be shown that they were composed of the products of cellulose provided for in paragraph 1213, *supra*, which reads, "products of cellulose, not compounded." Importer here insists that before the Board of General Appraisers (now United States Customs Court) it proved that the importation was a compound of cellulose, and that the provisions of paragraph 31 for compounds of cellulose, "by whatever name known * * * in blocks, sheets, rods, tubes, or other forms, * * * made into finished * * * articles," when considered with the proviso "* * * and all such articles * * * whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph," are not only more specific than are the provisions of paragraph 1430 but that the proviso has such compelling force as to draw away from any other paragraph in the act the merchandise at hand.

This court has heretofore considered the sweeping provisions of paragraph 1430 when compared with other paragraphs of the same act, *Blumenthal & Co.* v. *United States*, 14 Ct. Cust. Appls. 17, T. D. 41531, but we know of no decision of this or any other court involving a choice between paragraph 1430 and another paragraph of the same act also containing clauses and provisions obviously provided for the purpose of drawing into it merchandise which without the clause could be properly classified elsewhere.

The court below in a very well-written and well-considered opinion held as follows:

It is true that the proof offered by the importers shows that the braids in question are made in part of a small quantity of sulphur, and for that reason the witness called in behalf of the importers, and who made the analyses of the exhibits referred to, considered the braids made of cellulose compounded with other materials. The testimony on this point is conflicting, or at least indefinite, as to what constitutes *compounds of cellulose*, and we think it is not sufficient to justify us in holding that the articles in question are made of cellulose compounded with other materials, as contended by the importers. In our opinion, however, it makes no difference whether the articles in question are or are not made of cellulose compounded with other materials, as we are satisfied from an inspection of the samples admitted in evidence, and the testimony clearly shows, that the braids in controversy are composed of yarns, threads, or filaments, and therefore answer one of the requirements of said paragraph 1430 that the braids and other articles therein provided for be composed wholly or in chief value of "yarns, threads, or filaments."

\*　　　\*　　　\*　　　\*　　　\*　　　\*

The testimony shows that the materials (yarns, threads, or filaments) of which the braids are made are suitable and adapted for use in weaving, knitting, and sewing.

From these descriptions it requires no extended argument to convince one familiar with tariff construction that the braids in question are composed of yarns, threads, or filaments within the rulings of this board and the court. (Italics quoted.)

An examination of the testimony discloses that there is much conflict therein as to whether the cellulose is compounded or uncompounded. The court below recognizing this conflict held that the evidence was insufficient to justify it in holding that the cellulose was compounded. It did not find, however, affirmatively, from the evidence, that it was uncompounded. The collector found that it was uncompounded, and used the following language:

The merchandise in question consists of all-overs and braids of artificial horsehair, or composed of cellophane, visca, etc., products of cellulose provided for in paragraph 1213. It was returned for duty at 90 per cent ad valorem under paragraph 1430 of the act of 1922.

It is the contention of the importer that it is conceded on all sides that the constituent elements of the braids, which are in the form of "strips and other forms," consist of cellulose, sulphur, sodium, and water, and that it becomes a question of law as to whether or not these substances constitute a compound. The further point is argued that the addition of dye in coloring the braids gives the substance the character of a compound.

The importer introduced one witness whose qualifications and exceptional experiences are entitled to much weight. The Government's testimony, however, not only disputed his definition of a chemical compound, but accounted for the sulphur and sodium as being impurities in the cellulose product, and not added substances.

Under the circumstances of this case, the board was confronted with a question of fact concerning which there was a definite and irreconcilable conflict. It had the advantage of personal contact with the witnesses. Having observed their demeanor on the witness stand and, no doubt, having judged their qualifications, as well as their interest and prejudices, if any, it held in substance that the importer had not proved that the fact found by the collector was incorrect.

We have examined with some care the directly conflicting statements of the witnesses and we certainly would not be justified in holding that the board was in error in finding that the importer had not proved that the cellulose was compounded.

Several claims for classification under various paragraphs were set up in the protest by importer, but in the court below and in this court it has relied entirely upon its claim under paragraph 31.

Importer has not disputed the applicability of the "threads and filaments" part of paragraph 1430 to the merchandise involved, but insists that the proviso of paragraph 31 is controlling. Paragraph 31, if applicable, was applicable to a compound. Since the finding of the board is against the importer on this question, and since we can not disturb the finding under the circumstances, paragraph 31 is eliminated from consideration and the merchandise necessarily falls within paragraph 1430.

The judgment of the Board of United States General Appraisers (now United States Customs Court), is *affirmed*.